UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
                                                :

NANCY ELAINE KOUTRAKOS        :        3:11 CV 306 (CSH)
                                                :
V.                                              :
                                                :
MICHAEL J. ASTRUE,                 :
COMMISSIONER OF SOCIAL SECURITY  :       DATE: JANUARY 9, 2012
                                                :
------------------------------------------------------ x

**RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER, AND ON DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended, seeks review of a final decision by the Commissioner of Social Security ["SSA"] denying plaintiff Disability Insurance Benefits ["DIB"].

### I. ADMINISTRATIVE PROCEEDINGS

On November 23, 2005,[1] plaintiff applied for DIB, claiming that she has been disabled since June 27, 2005 due to lower back pain, tendinitis, and left shoulder pain, resulting from a car accident. (See Certified Transcript of Administrative Proceedings, dated March 24, 2010 ["Tr."] 37, 43).[2] Plaintiff's application was denied initially and upon reconsideration. (See Tr.

---

[1]This was not plaintiff's first application for benefits. On October 4, 2001, ALJ Roy P. Liberman issued his decision denying plaintiff's applications for DIB and Supplemental Security Income ["SSI"], which were filed on September 28, 1999, and in which plaintiff alleged disability since October 16, 1998 due to abdominal pain, hernia repair, and a lower back disorder. (Tr. 723-29)(the copy of ALJ Liberman's decision is incomplete.).

[2]A copy of the application does not appear in the two-volume administrative record. (See Dkt. #19, Brief at 1, n.1).

On July 27, 2007, plaintiff was rear-ended, pushing her car into the vehicle in front of her. (Tr. 361). As a result of this accident, plaintiff has migraine headaches, suffers from nausea, and has pain in her right hip that radiates down her leg. (Tr. 363-66). Additionally, plaintiff has knee pain that pre-dates the accident. (Tr. 365-66).

22).³  On July 3, 2006, plaintiff filed a request for a hearing by an Administrative Law Judge ["ALJ"] (Tr. 33), and on March 29, 2007 and May 14, 2007, hearings were held before ALJ Robert A. DiBiccaro, the latter of which was held for the purpose of soliciting testimony from a vocational expert, Kenneth R. Smith. (Tr. 354-95 (March hearing), 396-422 (May hearing);⁴ see Tr. 23-31).  In a decision dated July 27, 2007, the ALJ determined that plaintiff was not disabled. (Tr. 10-21).⁵  Plaintiff requested review of the ALJ's decision (Tr. 9A), and on March 19, 2008, the Appeals Council denied plaintiff's request for review (Tr. 4-6), thereby rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff then commenced an action in this Court, Koutrakos v. Astrue, 3:08 CV 791(CFD), and on March 4, 2009, the Court granted defendant's voluntary Motion to Remand, directing that the case be remanded to the ALJ for vocational expert testimony. (Tr. 460-67; see Tr. 426; Koutrakos v. Astrue, 3:08-CV-791(CFD), Dkts. ##12-15).⁶  On July 1, 2009, the Appeals Council remanded the case to the ALJ (Tr. 468-71), and an on-the-record pre-hearing conference was held on April 8, 2010 before ALJ DiBiccaro. (See Tr. 451-56, 1071-95).  Thereafter, on July 26, 2010, the ALJ issued an Amended Notice of Hearing informing plaintiff that a hearing was scheduled for August 5, 2010 "because [the ALJ] decided that an expert witness should testify." (Tr. 441-44; see Tr. 445-50).  On that date,

---

³(See Dkt. #19, Brief at 1, n. 1).

⁴Smith's testimony on May 14, 2007 is found at Tr. 409-21.

⁵There are two subsequent applications in the record -- for DIB and Supplemental Security Income ["SSI"], both dated December 17, 2007, in which plaintiff claims an onset date of July 28, 2007. (Tr. 475-79).

⁶Plaintiff was represented by counsel during the earlier administrative proceedings, and by her current counsel once the matter was brought to the federal court the first time. (Tr. 32, 457-59; see Tr. 34).

2

the hearing was held (Tr. 1096-1175) and the vocational expert, Joseph Thompson, C.R.C., testified by telephone, over the objection of plaintiff's counsel. (Tr. 1147-71). On December 23, 2010, the ALJ issued his notice of decision, denying plaintiff's application for benefits. (Tr. 423-40).

On February 25, 2011, plaintiff filed her complaint in this pending action, and on March 1, 2011, and again on March 2, 2011, this case was referred from Senior United States District Judge Charles S. Haight, Jr. to this Magistrate Judge. (Dkts. ##1, 6 & 8). On May 31, 2011, defendant filed his answer. (Dkt. #15; see also Dkts. ##13-14).[7] On September 19, 2011, plaintiff filed her Motion for Order Reversing the Decision of the Commissioner, with brief and exhibits in support (Dkts. ##19-20; see also Dkts. ##16-18),[8] and November 21, 2011, defendant filed his Motion to Affirm the Decision of the Commissioner, with brief in support. (Dkt. #23; see also Dkts. ##21-22).

For the reasons stated below, plaintiff's Motion for Order to Reverse the Decision of the Commissioner (Dkt. #19) is granted in part such that the matter is remanded, and defendant's Motion to Affirm the Decision of the Commissioner (Dkt. #23) is denied.

## II. STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the court must decide whether the

---

[7]Attached to the answer is a copy of the two-volume Certified Administrative Transcript, dated May 13, 2011.

[8]Attached to plaintiff's Motion and brief in support is an Appendix A listing plaintiff's medical treatment from January 1981 to July 2011, and copies of case law. Attached as Dkt. #20 is a copy of the Amended Notice of Hearing, dated July 26, 2010, a copy of the Notice sent to the vocational expert, Joseph L. Thompson, MS, CRC, and a copy of Thompson's curriculum vitae.

determination is supported by substantial evidence.  See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)(citation omitted).  Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(citation omitted); see Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998)(citation omitted).  The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact.  See Gonzalez v. Apfel, 23 F. Supp.2d 179, 189 (D. Conn. 1998)(citation omitted); Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)(citations omitted).  However, the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  See Dotson v. Shalala, 1 F.3d 571, 577 (7th Cir. 1993)(citation omitted).  Instead, the court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings.  See id. Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise.  See 42 U.S.C. § 405(g); see also Beauvoir v. Charter, 104 F.3d 1432, 1433 (2d Cir. 1997)(citation omitted).

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.  See  42 U.S.C. § 423(a)(1).  "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).

Determining whether a claimant is disabled requires a five-step process.  See 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is currently working. See 20 C.F.R. § 404.1520(a).  If the claimant is currently employed, the claim is denied.  See

20 C.F.R. § 404.1520(b).  If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied.  See 20 C.F.R. § 404.1520(c).  If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in Appendix 1 of the Regulations [the "Listings"].  See 20 C.F.R. § 404.1520(d); Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Balsamo, 142 F.3d at 79-80.  If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled.  See 20 C.F.R. § 404.1520(d); see also Balsamo, 142 F.3d at 80.  If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that he cannot perform his former work.  See 20 C.F.R. § 404.1520(e).  If the claimant shows he cannot perform his former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work.  See Balsamo, 142 F.3d at 80 (citations omitted).  Accordingly, a claimant is entitled to receive disability benefits only if he shows he cannot perform his former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment.  See 20 C.F.R. § 404.1520(f); see also Balsamo, 142 F.3d at 80 (citations omitted).

      The Commissioner may show a claimant's Residual Functional Capacity ["RFC"] by using guidelines ["the Grid"].  The Grid places claimants with severe exertional impairments, who can no longer perform past work, into employment categories according to their physical strength, age, education, and work experience; the Grid is used to dictate a conclusion of disabled or not disabled.  See 20 C.F.R. § 416.945(a)(defining "residual functional capacity" as the level of work a claimant is still able to do despite his or her physical or mental limitations).  A proper application of the Grid makes vocational testing unnecessary.

However, the Grid covers only exertional impairments; nonexertional impairments, including psychiatric disorders, are not covered. See 20 C.F.R. § 200.00(e)(2). If the Grid cannot be used, i.e., when nonexertional impairments are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is generally required to support a finding that employment exists in the national economy which the claimant could perform based on his residual functional capacity. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996), citing Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986).

### III.  DISCUSSION

Following the five step evaluation process, ALJ DiBiccaro found that plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date of June 27, 2005 through her date last insured of December 31, 2005. (Tr. 430).[9] The ALJ then concluded that plaintiff has the following severe impairments: vascular headaches, cervical and left (dominant) shoulder pain from a June 2005 automobile accident, obesity and gastric bypass surgery in 2004, lumbar disc condition, and left rotator cuff condition, with surgery after her date last insured. (Id.). Additionally, plaintiff had intermittent, non-severe feelings of situational depression, which is not a severe impairment, and after her date last insured, she suffered another fall in August 2008, which resulted in additional strains to her wrist, knee and left foot which are not pertinent to this claim. (Id.). In the third step of the evaluation process, the ALJ concluded that through plaintiff's date last insured, plaintiff's impairment or combination of impairments do not meet or equal an impairment listed in

---

[9]The ALJ also noted that plaintiff's "date last insured under Title II, for [DIB], is a key factor in the appeal[,]" which narrows the period between her alleged onset date to her date last insured to six months. (Tr. 427, 430).

6

Appendix 1, Subpart P of 20 C.F.R. Part 404. (Tr. 431). In addition, at step four, ALJ DiBiccaro found that after consideration of the entire record, from June 2005 though December 31, 2005, plaintiff had the residual functional capacity to perform a wide range of sedentary work as defined in 20 C.F.R. § 404.1567(a), although plaintiff was limited to occasional reaching overhead with her dominant left arm; occasional handling, grasping and fingering with that dominant hand; and occasional standing, walking, bending, and stooping, and she needed to avoid concentrated exposure to vibration. (Tr. 431-36). The ALJ concluded that through plaintiff's date last insured, plaintiff was unable to perform her past relevant work as a chef, event manager, hostess/manager, and self employed restaurant chef/owner; however, she could perform the duties of her past relevant occupation as a general manager in food service, as customarily performed in the national economy, as that job generally requires only sedentary duties and occasional reaching and handling. (Tr. 436). According to the ALJ, plaintiff acquired works skills involving customer service, organizing work and directing others' work, and such skills are transferable to the sedentary job of information clerk. (Tr. 437). The ALJ also concluded that in addition to the past relevant job identified by the vocational expert, plaintiff can also perform the jobs of information clerk, and surveillance system monitor. (Tr. 438-39). Accordingly, the ALJ concluded that plaintiff was not under a disability at any time from June 27, 2005 through December 31, 2005, the date last insured. (Tr. 439).

Plaintiff asserts that the ALJ erred in relying on improper "phoned in" testimony by the vocational witness (Dkt. #19, Brief at 15-20); the testimony of the vocational witness was unsupported, incompetent, and was in clear, unresolved conflict with the Dictionary of Occupational Titles (id. at 21-27); the ALJ did not apply the "treating source rule" (id. at 27-

30); the ALJ did not perform a proper "combination of impairments" analysis (id. at 31-33); the ALJ's assessment of plaintiff's credibility was flawed (id. at 33-34); and the ALJ failed to assess adequately plaintiff's claims of pain (id. at 35-37).

Defendant asserts that the Commissioner permits vocational expert testimony to be taken by telephone, and even if it is precluded, the use of such testimony in this case did not prejudice plaintiff (Dkt. #23, Brief at 5-11); substantial evidence supports the ALJ's findings at steps four and five, as the DOT provision relied upon by the vocational expert does relate to the restaurant industry, and plaintiff's RFC permits her to perform the work articulated by the vocational expert (id. at 11-14); the ALJ properly considered the relevant opinion evidence of record, and there is nothing to suggest that plaintiff's level of limitation during the relevant period exceeded the ALJ's findings (id. at 14-17); the ALJ properly considered plaintiff's limitations in combination (id. at 17-19); and the ALJ properly weighed the credibility of plaintiff's subjective statements concerning pain and other functional limitations (id. at 19-23).

A. TELEPHONIC VOCATIONAL EXPERT TESTIMONY[10]

On or about July 26, 2010, defendant provided plaintiff with an "Amended Notice of Hearing" in which plaintiff was informed that her hearing was rescheduled to August 5, 2010 so that an "expert witness [can] testify"; a letter bearing the same date was sent to Joseph L. Thompson in Toledo, Ohio requesting his testimony in the capacity of a vocational expert.

---

[10]Defendant properly has observed that "[i]n the past, this Court has demonstrated that it will not address all of the Commissioner's arguments if it rules against him on one argument." (Dkt. #23, Brief at 5, n.7). Here, defendant "respectfully requests that even if remand is ordered based on another issue," then the Court "still discuss its consideration of the Commissioner's arguments pertaining to telephonic testimony to provide necessary guidance should this issue arise in future cases." (Id.).

(Tr. 441; Dkt. #20).[11]  By letter dated July 28, 2010, plaintiff, through her counsel, objected to having the vocational expert appear "presumably" by telephone  (Tr. 709-10), and plaintiff renewed this objection at the hearing,[12] which the ALJ overruled.  (Tr. 1148, 1150; see Tr. 426, n.1).[13]

20 C.F.R. § 404.936(c)  provides that "[i]n setting the time and place of the hearing, the [ALJ] determines whether [the claimant's] appearance or that of any other individual who is to appear at the hearing will be made" by one of two means: "in person or by video teleconferencing."  Within § 404.936(c), there is a reference to 20 C.F.R. § 404.950; § 404.950(a) and (e) provide that a claimant, and any witnesses, may appear "either in person or, when the conditions of § 404.936(c) exist, by video teleconferencing."  There is nothing in the regulations that provides for testimony other than "in person or by video teleconferencing."[14]

---

[11]As discussed above, in accordance with the remand order issued by this Court, the ALJ held a pre-hearing conference on April 8, 2010, after which he decided that vocational expert testimony was necessary. (See Tr. 1071-95).  Accordingly, the ALJ scheduled a second hearing at which such testimony would be heard.  (See Tr. 1096-175).

Also, as plaintiff appropriately notes, the Notice to the vocational expert does not appear in the Administrative Record.  (See Dkt. #19, Brief at 15, n. 70; but see Dkt. #20).

[12]At the hearing, counsel objected to the vocational expert testifying by telephone, and he objected to the "characterization [of the vocational expert] as independent or as qualified to testify[]" as the vocational expert worked for Corvell Corporations to "get people who ha[ve] made claims [with the insurance carrier for disability benefits] back to work[,]" and such employment presents an inherent conflict of interest. (Tr. 1149-50).

[13]In his hearing decision, the ALJ noted that "[c]ounsel was given ample opportunity to question the vocational expert on the telephone and did so."  (Tr. 426, n. 1)(citation omitted).

[14]See Porter v. Barnhart, No. C05-5166(FDB), slip. op. at 3 (W.D. Wash. Mar. 3, 2006)(USMJ's Recommended Ruling)("The plain and natural meaning of this regulation does not support the administration[']s use of telephone appearances in administrative hearings. . . . The specificity used in allowing videoconferences supports the finding that telephone conferences are not an acceptable media to facilitate an appearance by a witness at an administrative hearing."); Porter v. Barnhart, No. C05-5166(FDB), slip. op. at 3 (W.D. Wash. Apr. 11, 2006)(USDJ's affirmance, observing that "[w]hile there may be practical reasons that support taking a witness's

9

In this case, the ALJ's Amended Notice of Hearing did not indicate that the vocational expert would testify in any manner other than in-person. (Tr. 441-44; see also Tr. 445-50). Pursuant to 20 C.F.R. § 404.938, a claimant must be sent a notice of the hearing and in such notice, the claimant "will . . . be told if your appearance or that of any other party or witness is scheduled to be made by video teleconferencing rather than in person." 20 C.F.R. § 404.938(b). A number of courts, within this Circuit and beyond, have acknowledged situations in which testimony has been taken telephonically, without addressing whether such a practice is consistent with the governing regulations.[15] However, just this past summer, United States District Judge Mark R. Kravitz of this district examined this precise issue and in doing so, concluded that the lack of notice of telephonic testimony and the ALJ's possible reliance on such "improper telephonic testimony constitutes legal error," and thus remand was warranted.[16] Edwards v. Astrue, No. 3:10 CV 1017(MRK), 2011 WL 3490024, at *5 (D.

---

testimony by telephone, nevertheless, those reasons have not resulted in an express provision being placed in the regulations.").

[15] See Caira v. Astrue, No. 08 CV 4534(RJD), 2011 WL 1326607, at *2 (E.D.N.Y. Mar. 31, 2011); Primiani v. Astrue, No. 09-CV-2405(JG), 2010 WL 474642, at *4 (E.D.N.Y. Feb. 5, 2010); Klement v. Astrue, 1:08-CV-0640(LEK)(VEB), 2009 WL 3837859, at *1 (N.D.N.Y. Nov. 16, 2009); Sellie v. Astrue, No. 07-CV-0475(VEB), 2009 WL 2882946, at *1 (N.D.N.Y. Sept. 4, 2009); Todman v. Astrue, No. 07 Civ. 10473 (JSR), 2009 WL 874222, at *4, 6 (S.D.N.Y. Mar, 30, 2009); see also Dotson v. Astrue, No. 5:10-CV-230-DPM, 2011 WL 3563163, at *2 (E.D. Ark. Aug. 15, 2011); Killiany v. Comm'r of Soc. Sec., No. 2:10-CV-00672, 2011 WL 3942211, at *5 (S.D. Ohio Aug. 3, 2011), Magistrate Judge's Recommended Ruling adopted absent objection, 2011 WL 3957295 (S.D. Ohio Sept. 6, 2011); Mitchell v. Astrue, No. 1:10-CV-1191(JMS)(MJD), 2011 WL 3205306, at *4 (S.D. Ind. July 27, 2011); Monts v. Astrue, C.A. No. 10-CV-30189-MAP, 2011 WL 2456636, at *4 (D. Mass. Jun. 15, 2011); Crosby v. Astrue, No. 1:09-CV-01764 (GSA), 2011 WL 1047338, at *1 (E.D. Cal. Mar. 18, 2011); Thompson v. Astrue, No. Civ. A. 10-182, 2010 WL 5651401, at *4 & n.4 (E.D. La. Dec. 22, 2010), Magistrate Judge's Recommended Ruling adopted absent objection, 2011 WL 291305 (E.D. La. Jan. 24, 2011); Acevedo v. Comm'r of Soc. Sec., No. Civ. A. 09-4428(PGS), 2010 WL 3862461, at *3 (D. N.J. Sept. 27, 2010); Ainsworth v. Astrue, No. 09-CV-286-SM, 2010 WL 2521432, at *4 (D. N.H. Jun. 17, 2010)("whether the practice of accepting expert testimony by telephone is or is not authorized by the governing regulations, remand is required."); Khut v. Astrue, No. C-09-00673 (EDL), 2010 WL 545868, at *5 (N.D. Cal. Feb. 12, 2010).

[16] In Edwards, the telephonic testimony was taken from a medical expert rather than a vocational expert as in this case. The regulations do not distinguish between such experts as far as

Conn. Aug. 10, 2011); see Morlando v. Astrue, No. 3:10 CV 1258(MRK), 2011 WL 4396785, at *6, n. 1 (D. Conn. Sept. 20, 2011)("Testimony by telephone or other means would require both notice and consent.")(citation omitted). While defendant "implores this Court to reconsider its position in Edwards[,] . . . or, in the alternative, find that the facts of this case do not warrant remand even under the reasoning the Edwards' Court employed[,]" (Dkt. #23, Brief at 5), this Court declines defendant's invitation to do either.[17]

The Commissioner "concedes that this Court and the other district courts in the Second Circuit have articulated a rational basis for finding that, as a matter of law, it is erroneous to allow expert testimony via telephone[,]" (Dkt. #23, Brief at 6, citing Edwards, 2011 WL 3490024, at *7-10; Palaschak v. Astrue, No. 08-1172(GLS), 2009 WL 6315324, at *9-12 (N.D.N.Y. Nov. 18, 2009), Magistrate Judge's Recommended Ruling approved over objection, 2010 WL 1257895 (N.D.N.Y. Mar. 26, 2010)), but defendant contends that these holdings are grounded on the erroneous refusal to give any weight to the Social Security Hearings, Appeals and Litigation Law Manual ["HALLEX"], I-2-5-30, 1994 WL 637367 (S.S.A.), which does allow for expert testimony. (Dkt. #23, Brief at 6 (citation omitted)).[18] As defendant is no doubt aware, and as Judge Kravitz stated in Edwards, "[a]lthough the Second Circuit Court of Appeals has not reached the issue, other circuits and Second Circuit district courts have found that HALLEX policies are not regulations and therefore not

---

the Notice requirements are concerned, and thus there is no distinction between the two.

[17]Although defendant now vehemently argues that the Edwards decision should be "reconsider[ed,]" (Dkt. #23, Brief at 5-7, 9 & n.12; id. at 8 (the reliance on United States Supreme Court precedent involving the right to confront a witness during cross-examination in a criminal trial is "improper")), the Court notes that defendant did not appeal the Edwards decision.

[18]The relevant HALLEX policy states that "[t]he preferred method for obtaining [medical expert] or [vocational expert] opinion is through in-person testimony or testimony taken via telephone or video teleconference at a hearing." HALLEX, I-2-5-30, 1994 WL 637367, at *1.

11

deserving of controlling weight." 2011 WL 3490024, at *6 (citing Martinez v. Astrue, No. 3:07 CV 699(SRU), 2009 WL 840661, at *2, n.1 (D. Conn. Mar. 30, 2009)("Certain manuals, including HALLEX, are not regulations and therefore are not binding on the Social Security Administration.")(additional citation omitted). See Schweiker v. Hanson, 450 U.S. 785, 789 ("the [HALLEX] Claims Manual is not a regulation[,] has no legal force, and it does not bind the SSA."), reh. denied, 451 U.S. 1032 (1981); Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003)(HALLEX "has no legal force and is not binding.")(internal quotations & citation omitted); Doherty v. Astrue, No. 07-CV-954, 2009 WL 1605360, at *8 (N.D.N.Y. Jun. 5, 2009)(provisions of HALLEX are not binding on the SSA).

Additionally, defendant urges this Court to "employ a standard where it will recognize improper notice as an error of law, but require a plaintiff to reasonably demonstrate harm or prejudice -- supported by the record -- stemming from the error before ordering a remand." (Dkt. #23, Brief at 7).[19] The Court need not go this far as it is clear that the ALJ's conduct of improperly notifying plaintiff that the vocational expert would testify, without notifying plaintiff that how such testimony would be taken, and the taking of such improper telephonic testimony, runs contrary to the express governing language of the Secretary's regulations. Furthermore, in this case, great weight was necessarily assigned to the vocational expert testimony, in so far as this case was remanded from this Court in 2009 precisely for the taking of such testimony. (Tr. 460-67; see Tr. 426, 436; Koutrakos v. Astrue, 3:08 CV 791(CFD), Dkts. ##12-15).

---

[19]In Palaschak, the Magistrate Judge held the regulations control and it was error to allow telephonic testimony of a vocational expert over the objection of the plaintiff, but "[w]hile the Court is loathe to allow the Commissioner to sidestep the regulations in this fashion," taking testimony telephonically constituted harmless error in that case as the plaintiff was able to "extensively cross-examine the [vocational expert]." 2009 WL 6315324, at *11-12. As discussed below, this Court disagrees that such "sidestepping" is permissible.

In his decision following remand, the ALJ defensively addressed this issue in his analysis at step five by articulating policy reasons for taking the vocational expert testimony telephonically, so as to establish that such procedure is harmless. (Tr. 437). Specifically, the ALJ noted that because of the "increased number of disability claims and increased motions to expedite 'dire need' cases[,]" telephone testimony has been adopted, and to "refuse expansion of the vocational and medical expert system, through telephone and/or video testimony, would increase the delays that the claimants on the New Haven docket, and other dockets, face." (Id.).[20] While the Court is sympathetic to, and intimately familiar with, the increased number of disability claims and the consequential increase in delays from filing to claim resolution, defendant may not adopt a procedure that runs afoul of the explicit language of the SSA's regulations.

Prior to the adoption of the governing regulations which limit the manner in which testimony may be taken, the SSA undertook the notice-and-comment rulemaking process during which the SSA noted many of the same benefits articulated by the ALJ in this case: namely, that allowing for testimony by video teleconferencing would provide for more timely hearings, would save the ALJ travel time, would allow for more case proceedings, and would allow for an increase in the number of hearings held. See Video Teleconferencing Appearances Before Administrative Law Judges of the Social Security Administration, 68 Fed. Reg. 69003, 69004 (Dec. 11, 2003)(codified at 20 C.F.R. §§ 404.929, 404.938, 404.950, 416.1429, 416.1436, 416.1438, 416.1450). However, the SSA also observed that a video

---

[20] The ALJ continued that, a "vocational expert is not asked to give an opinion based on the claimant's demeanor, appearance or pain;" but rather, needs only to listen to testimony about a claimant's past jobs and how they are performed. (Id.). Further, the ALJ stated that counsel at each of plaintiff's hearings had "the opportunity to challenge the vocational expert's credentials or impartiality, and to pose questions to the expert." (Id.).

13

teleconference may not be interchanged with a telephonic appearance.[21]  See id. at 69006.  Additionally, if a party timely objects to appearance by video teleconference, the hearing would be rescheduled to "one at which the individual may appear in person."  Id.

In light of this background, and the explicit language of the regulations, this Court declines to embrace defendant's proposed harmless error standard.  To do so would be to allow defendant to circumvent the plain meaning of the regulations.  As Judge Kravitz explicitly held in Edwards:

> Given the growing use of . . . expert telephonic testimony in Social Security Administrative hearing –- which likely serves efficiency purposes and may not often disadvantage claimants –- this Court will not go so far as to rule that all . . . expert testimony in such hearing must be either in person or by video teleconference.  However, ALJs must provide claimants with notice that a witness will be testifying telephonically, and absent a new rule [created through the approved notice-and-comment process], . . . experts should not be allowed to testify telephonically over a claimant's timely filed objection.

2011 WL 3490024, at *8 (emphasis added).  Accordingly, while the ALJ's decision to allow the vocational expert to testify telephonically may not amount to a due process violation, it clearly violates the SSA's governing regulations.  Given this legal error, the matter is remanded to the ALJ for a rehearing, including testimony from a vocational expert taken by

---

[21]The SSA noted that in situations in which problems arise with video teleconferencing equipment, the witness would not testify by telephone, but rather, the entire hearing would be rescheduled. See id. at 69006.

Additionally, as observed in Edwards, in 2007, when the SSA proposed a regulation to allow telephonic testimony at hearings, the Association of Administrative Law Judges "strongly opposed" such a mode of testimony on grounds that "[a] telephone hearing does not provide for the due process required for a constitutional hearing," as it "adversely affects the opportunity of the claimant to observe the judge and what is actually going on in the hearing, including undermining the claimant's ability to effectively cross-examine the testimony of expert witnesses." Edwards, 2011 WL 3490024, at *6, quoting Comments of the Association of Administrative Law Judges Regarding Social Security Administration Notice of Proposed Rulemaking, http://www.aalj.org/pdf/08d003.pdf  (last visited December 6, 2011).  As Judge Kravitz noted, while the language refers to a claimant's testimony by telephone, "the reasoning applies equally to the situation where the . . . expert is providing only telephonic testimony." Edwards, 2011 WL 3490024, at *6, n.1.

means provided for in the regulations.

### B. REMAINING ARGUMENTS

The Court need not address plaintiff's other arguments as upon remand and after a de novo hearing, defendant shall review this matter in its entirety, assessing plaintiff's alleged impairments in combination, considering and applying the treating physician rule, assessing plaintiff's credibility and pain, and considering the vocational expert's testimony in light of plaintiff's previous work and supported limitations.

### IV. CONCLUSION

For the reasons stated above, plaintiff's Motion to Reverse the Decision of the Commissioner (Dkt. #19) is granted in part such that the matter is remanded pursuant to sentence four of 42 U.S.C. 405(g) for further proceedings as articulated above, and defendant's Motion to Affirm the Decision of the Commissioner (Dkt. #23) is denied.

The parties are free to seek the district judge's review of this recommended ruling. See 28 U.S.C. § 636(b)**(written objection to ruling must be filed within fourteen calendar days after service of same)**; Fed. R. Civ. P. 6(a) & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**.

Dated at New Haven, Connecticut, this 9th day of January, 2012.

                                      /s/ Joan G. Margolis, USMJ
                                      Joan Glazer Margolis
                                      United States Magistrate Judge