**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NANCY E. KOUTRAKOS,<br><br>          Plaintiff,<br> v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY, U.S.A.,<br><br>          Defendant. | 3:11 - CV- 306 (CSH)<br><br><br><br>**Date: April 13, 2012** |

**RULING ON DEFENDANT'S OBJECTION TO RECOMMENDED RULING OF**
**MAGISTRATE JUDGE**

HAIGHT, Senior District Judge:

Defendant Michael J. Astrue, the Commissioner of Social Security ("Commissioner"), has filed a timely objection [Doc. 25] to a Recommended Ruling filed by Magistrate Judge Joan G. Margolis [Doc. 24]. Plaintiff Nancy E. Koutrakos defends the Recommended Ruling. [Doc. 26]. This Court considers the propriety of the Recommended Ruling de novo. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

**I.**

**A.**

In this action, Plaintiff Koutrakos sought review of the Commissioner's final decision denying her claim for disability insurance benefits. She filed a motion to reverse that adverse decision. The Defendant Commissioner cross-moved to affirm his decision. Magistrate Judge

1

Margolis's recommended rulings granted plaintiff's motion in part, such that Plaintiff's disability claim matter would be remanded to the Social Security Administration ("SSA") with instructions, and denied the Commissioner's motion to affirm.[1]

The Commissioner's objection turns upon the nature and effect of what Judge Margolis characterized as an error committed by an SSA administrative law judge ("ALJ") during a hearing on the merits of Koutrakos's claim for disability benefits. Specifically, the ALJ allowed a vocational expert witness, selected and called by the SSA, to testify and be cross-examined by telephone. Plaintiff's counsel objected to that procedure, asserting that the witness should appear in person at the hearing before the ALJ and counsel for the parties, to be examined and cross-examined in that setting. The ALJ overruled that objection and convened a hearing on August 5, 2010, at which the vocational expert testified by telephone, over Koutrakos's renewed objection. There were apparently no further proceedings before the SSA. On December 10, 2010, the ALJ issued his decision, denying plaintiff's application for benefits.

That denial became the Commissioner's decision, and the subject matter of these cross-

---

[1] The brief for defendant, submitted by the office of the United States Attorney for this District, recites in its opening paragraph that defendant "respectfully objects to the Recommended Ruling of United States Magistrate Judge Joan G. Margolis ('Magistrate'), as follows: . . ." In point of fact, the defendant's objection is less than respectful. Unaccountably, the rest of defendant's brief incompletely and incorrectly refers to "Magistrate Margolis" or "the Magistrate." One is constrained to wonder whether the United States Attorney's office is either unaware of, or chose in this case to disregard out of pique, Section 321 of Pub. L. 101-650, which provides: "After the enactment of this Act [Dec. 1, 1990], each United States magistrate appointed under section 631 of title 28, United States Code, shall be known as a United States magistrate judge," a change of name the Act explicitly imposed upon "any regulation of any department or agency of the United States in the executive branch" issued before the date of enactment in 1990. Twenty-two years should be sufficient time for the denizens of a United States Attorney's office to learn the legally correct way to refer to a Magistrate Judge, a judicial officer sensible attorneys routinely address as "Judge." Throughout this Ruling I will respectfully refer to "Judge Margolis."

motions.  Plaintiff Koutrakos contended before Judge Margolis that the ALJ erred in taking the vocational expert witness's testimony by telephone, and that the error required reversal of the Commissioner's decision denying her claim for disability benefits.  She prayed for an order reversing the Commissioner's decision and remanding her claim to the SSA so that a vocational expert witness could testify in person before an ALJ and counsel for the parties.  The Commissioner contended that the ALJ had not erred in taking the witness's testimony by telephone, even over the objection of plaintiff's counsel, or alternatively, if the ALJ's action was erroneous, it was harmless error and did not justify reversing the Commissioner's decision to deny plaintiff's claim.  Judge Margolis agreed with Koutrakos.  She recommends to this Court that the case be "remanded to the ALJ for a rehearing, including testimony from a vocational expert taken by the means provided for in the regulations" [Doc. 24] at 14-15, which in Judge Margolis's perception means "live" testimony, not testimony given over a telephone.[2]

B.

Before addressing these issues, it is appropriate for the Court to note the central and crucial importance of opinion testimony given by a vocational expert in cases such as this one.  Plaintiff's underlying claim for disability benefits asserts that "she has been disabled since June 27, 2005 due to lower back pain, tendinitis, and left shoulder pain, resulting from a car accident." R.R. at 1.  On that date, plaintiff claims, "plaintiff was rear-ended, pushing her car into the vehicle in front of her. As a result of the accident, plaintiff has migraine headaches, suffers from nausea, and has pain in her right hip that radiates down her leg.  Additionally, plaintiff has knee pain that pre-dates the accident."

---

[2]  The Magistrate Judge's Recommend Ruling, to which the Commissioner objects, is [Doc. 24] in this action.  I will cite it throughout this Ruling as "R.R."

*Id.* at 1 n.1.  Under the Social Security statutory and regulatory scheme, determining whether a claimant is disabled requires a five-step process, which for the purposes of the present case may be summarized thus: A claimant who was previously employed before the onset of the claimed disability, but who is not currently employed, and has a severe mental or physical impairment which is not considered automatically disabling because it is not included in regulatory Listings of such impairments, "will have to show that he cannot perform his former work.  If the claimant shows he cannot perform his former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work.  Accordingly, a claimant is entitled to receive disability benefits only if he shows he cannot perform his former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment." R.R. at 5 (citations omitted).

It is at this stage of an application for disability benefits that a vocational expert frequently appears.  The Commissioner may meet his burden of showing that a claimant can perform other gainful work by applying regulatory guidelines ("the Grid") to the claimant's demonstrated residual functional capacity, which in some circumstances may "be used to dictate a conclusion of disabled or disabled."  In such a case, "[a] proper application of the Grid makes vocational testing unnecessary."  However, the Grid does not cover all impairments; and "[i]f the Grid cannot be used, *i.e.*, when nonexertional impairments are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is generally required to support a finding that employment exists in the national economy which the claimant could perform based on his residual functional capacity." R.R. at 5-6 (citations omitted).  The case at bar is such a case.

The careful reader will note that if the testimony of a vocational expert witness is sought at this stage of a disability proceeding, typically it is for the purpose of determining whether the

4

Commissioner can sustain his burden of showing that the claimant can perform other gainful work, a finding that results in rejection of the claim. The procedural history of the case at bar reveals that is what happened. Plaintiff first applied for disability benefits in November 2005. SSA initially denied her claim. Plaintiff requested and received a hearing by an ALJ; "on March 29, 2007 and May 14, 2007, hearings were held before ALJ Robert A. DiBiccaro, the latter of which was held for the purpose of soliciting testimony from a vocational expert, Kenneth R. Smith." R.R. at 2. The ALJ denied plaintiff's claim, her request for review was denied, the ALJ's decision became the final decision of the Commissioner, and plaintiff filed an earlier action in this Court, before District Judge Droney (as he then was): *Koutrakos v. Astrue*, 3:08-cv-791 (CFD). Judge Droney granted plaintiff's voluntary motion to remand, and directed "that the case be remanded to the ALJ for vocational testimony." *Id*. The parties attended a conference before ALJ DiBicarro, who on July 26, 2010 issued a notice that a hearing was scheduled for August 5, 2010 "because [the ALJ] decided that an expert witness should testify." *Id*. (quotation is from the administrative record). That vocational expert witness was Joseph Thompson, C.R.C., who as noted testified by telephone on August 5, 2010, over the objection of plaintiff's counsel. On December 23, 2010, the ALJ again denied plaintiff's claim; and plaintiff again filed an action (the present one) in this Court.

This undisputed procedural history compels the inference that Mr. Thompson, the vocational expert witness who testified in response to Judge Droney's order on remand, is the key witness in the case, and his testimony was of central importance on the question of whether or not plaintiff is disabled under the statutory and regulatory scheme. As Judge Margolis aptly observed, "in this case, great weight was necessarily assigned to the vocational expert testimony, in so far as this case was remanded from this Court in 2009 precisely for the taking of such testimony." R.R. at 12.

## II.

In her Recommended Ruling, the Magistrate Judge concluded that (1) the ALJ committed error by using a telephone to take, over objection, testimony of decisive significance from so important a witness, and (2) the ALJ's error could not be disregarded as harmless.  On these objections by the Commissioner, I am asked to consider whether those conclusions are correct.

On July 26, 2010, the SSA sent plaintiff an "Amended Notice of Hearing" which informed her that her hearing was scheduled for August 5, 2010, "so that an expert witness [can] testify." R.R. at 8.  The SSA also sent a letter, bearing the same date of the notice, to Joseph L. Thompson in Toledo, Ohio, requesting his testimony at the Koutrakos hearing in the capacity of a vocational expert.  It would appear that counsel for plaintiff received a copy of that letter; by letter dated July 28, counsel objected to having the vocational expert appear "presumably" by telephone.  Counsel for plaintiff renewed that objection when, at the hearing, Thompson's testimony was taken over a telephone. R.R. at 8-9.  It is undisputed that the SSA did not give Koutrakos explicit notice that this crucial witness would testify by telephone instead of appearing at the hearing; and as soon as plaintiff's counsel suspected and then learned about telephoned testimony, he objected to it.  The ALJ overruled the objection and took Thompson's testimony over the telephone.  *Faute de mieux*, counsel for Koutrakos used the telephone line to conduct his cross-examination of the physically absent vocational expert witness.

In a careful and thorough analysis, Judge Margolis concluded that the ALJ's proceeding in that manner violated the SSA's own regulations, printed in 20 C.F.R. § 404.938.  Section 404.938(b) provides that in cases such as this, a benefits claimant must be sent a notice of a hearing which tells the claimant if "your appearance or that of any other party or witness is scheduled to be

6

made by teleconferencing rather than in person." R.R. at 10. "Teleconferencing" is universally understood to mean a video teleconference. Prior to the adoption of the current regulations, the SSA undertook the customary notice-and-comment rulemaking process, during which SSA officials stated that (1) a video teleconference may not be interchanged with a telephonic appearance; (2) if a party timely objects to appearance by video teleconference, the hearing would be rescheduled to "one at which the individual may appear in person"; and (3) if problems arise with video teleconferencing equipment, the witness would not testify by telephone, but rather, the entire hearing would be rescheduled. *See Video Teleconferencing Appearances Before Administrative Law Judges of the Social Security Administration*, 68 Fed. Reg. 69003, 69006 Dec. 11, 2003), cited and quoted in the R.R. at 13-14. Given the wording of the regulation as promulgated and the process which preceded it, Judge Margolis concluded that "while the ALJ's decision to allow the vocational expert to testify telephonically may not amount to a due process violation, it clearly violates the SSA's governing regulations," and that, "in light of this background, and the explicit language of the regulations, this Court declines to embrace defendant's proposed harmless error standard." R.R. at 14.

Judge Margolis cited and relied upon Judge Kravitz's opinion in *Edwards v. Astrue*, No. 3:10-cv-1017, 2011 WL 3490024 (D.Conn. Aug. 10, 2011), a disability action in which the ALJ proposed to take the testimony of a crucial medical expert by telephone, and the claimant objected "on the basis that there had been no notice of telephonic testimony and that it was her right to cross-examine the witness in person." 2011 WL 3490024, at *2. The ALJ overruled the objection, took the medical expert's testimony by telephone, and denied the claim for benefits. The claimant brought an action in this Court. Judge Kravitz held that the ALJ committed error in taking the expert's telephoned testimony, that the error was not harmless in the circumstances, and that the

Commissioner's decision had to be reversed and a remand ordered.

Judge Kravitz began his analysis in *Edwards* by noting: "The few courts that have addressed this issue have usually found the inclusion of such telephonic evidence to be legal error." 2011 WL, at *7 (citing cases). In one of these, *Porter v. Barnhart*, No. CO5-5166FDB, slip op. (W.D.Wash. Mar.3, 2006) (recommended ruling), at 3, the magistrate judge said: "[T]he regulation limits witness appearance and testimony to personal appearances and videoconferences. The specificity used in allowing videoconferences supports the finding that telephone conferences are not an acceptable media to facilitate an appearance by a witness at an administrative hearing." Judge Kravitz expressed a more balanced view in *Edwards*:

> Given the growing use of medical expert telephonic testimony in Social Security Administrative hearings – which likely serves efficiency purposes and may not disadvantage claimants – this Court will not go so far as to rule that all medical expert testimony in such hearings must be either in person or by video teleconference. However, ALJs must provide claimants with notice that a witness will be testifying telephonically, and *absent a new rule, medical experts should not be allowed to testify telephonically over a clamant's timely objection.* If the Commissioner wishes to receive *Chevron* deference when it allows such telephonic testimony without notice or over claimants' objections, the Social Security Administration must create a rule through the approved notice-and-comment process.

2011 WL 3490024, at *8 (emphasis added).

Judge Kravitz's latter suggestion is, of course, entirely apt, since the present regulation's apparent restriction of testimony to personal appearances or video teleconferences was the product of the notice-and-comment process. The *Edwards* case involved the testimony of a medical expert, but for purposes of the present analysis, there is no discernible difference between medical and vocational expert witnesses, whose testimony is equally critical to the SSA's decision to grant or

deny disability benefits.  I agree with the quoted reasoning and result in *Edwards* and adopt them as my own in the case at bar.  ALJs conducting administrative hearings for the purpose of deciding whether or not a claimant can receive disability benefits are not at liberty to disregard the SSA regulatory scheme and its history and receive the testimony of a key expert witness by telephone, in cases where the claimant makes a timely objection to that procedure and insists upon the witness's physical and visible presence while testifying, either within the walls of the hearing room or by video teleconference, the procedure to which the regulations clearly entitle her.  It follows that the ALJ in this case erred in receiving and considering the telephoned testimony of Mr. Thompson, the vocational expert,  over the timely objection of counsel for claimant Koutrakos.

### III.

The remaining question is whether that error was harmless, so that the Commissioner's decision to reject plaintiff's disability claim may stand.  As noted, Judge Margolis refused to excuse as "harmless" an error by the ALJ that disregarded "the explicit language of the regulations."  Judge Kravitz reached the same conclusion in *Edwards*, holding that the ALJ's error in taking telephoned testimony from a medical expert was not harmless.  He reasoned that had the medical expert "appeared in person or by video teleconference, [i]t is possible that Ms. Edwards's cross-examination may have been more effective or that the ALJ may have found the medical expert's testimony to be less persuasive."  2011 WL 3490024, at *9.  That possibility arose, in Judge Kravitz's view, from well-recognized principles: "Cross-examination is a vital aspect of a Social Security administrative hearing, and medical expert testimony is critical. . . . Cross-examination is not nearly as effective when the questioner cannot adjust his or her questions based on the appearance or the demeanor of the witness."  *Id*. at *10.  And Judge Kravitz added in *Edwards*: "Not

only is face-to-face confrontation essential to fairness, it is essential to the appearance of fairness." For that proposition, Judge Kravitz quoted a comment by, tellingly, *the Association of Administrative Law Judges* regarding an earlier SSA notice of proposed rulemaking: "Telephonic testimony conveys the impression that the hearing is perfunctory and not an important stage in the Social Security disability process." *Id.* at *9. Given these circumstances, Judge Kravitz concluded that "this Court cannot find that the telephonic testimony of the medical expert, taken over Ms. Edwards's objection, was harmless." *Id.* The case was remanded to the SSA "for a *de novo* hearing." *Id.* at 11. I agree with this reasoning by Judge Kravitz in *Edwards*, and adopt it in this case.

The Commissioner did not appeal this Court's opinion in *Edwards*, and does not refer to that case in his four-page brief in support of its objection to the Magistrate Judge's recommended ruling in the case at bar. Of course, the Commissioner's failure to appeal *Edwards then* does not preclude him from disagreeing with the decision *now*, as presumably he does; but it would have been interesting, if not illuminating, to read the Commissioner's critique of Judge Kravitz's reasoning in *Edwards*. Instead, the Commissioner places sole reliance on the Supreme Court's decision in *Shinseki v. Sanders*, 556 U.S. 396, 129 S.Ct. 1696 (2009), which the Commissioner argues "warned against the type of reasoning the Magistrate employs" in recommending a remand in this case. Objection [Doc. 25] at 2. Before examining the possible effect of the Supreme Court's reasoning in *Shinseki v. Sanders* upon the reasoning of the Magistrate Judge in the case at bar, one must understand the Commissioner's perception of just what Judge Margolis's reasoning consisted of.

In his brief to this Court, the Commissioner describes himself as arguing before the Magistrate Judge that even if "the taking of expert testimony via telephone constitutes legal error,"

Koutrakos "was not harmed by this error.  The Commissioner explained that Plaintiff relied solely on the presence of an error of law and made no effort to argue any actual harm stemming from that error." [Doc. 25] at 2.  In his brief to the Magistrate Judge, the Commissioner had urged Judge Margolis to "employ a standard where it will recognize improper notice as an error of law, but require a plaintiff to reasonably demonstrate harm or prejudice – supported by the record – stemming from the error before ordering a remand." [Doc. 23] at 7, quoted in the R.R. at 12.   The Magistrate Judge having recommended a remand, the Commissioner now criticizes her on the ground that she "expressly refused to inquire into whether any actual harm occurred," instead stating in the R.R. that she "need not go this far as it is clear that the ALJ's conduct of improperly notifying plaintiff that the vocational expert would testify, without notifying plaintiff how such testimony would be taken, and the taking of such improper telephonic testimony, runs contrary to the express governing language of the Secretary's regulations." R.R. at 12.[3]  Judge Margolis reiterated at R.R. 14: "In light of this background, and the explicit language of the regulations, this Court declines to embrace defendant's harmless error standard.  To do so would be to allow defendant to circumvent the plain meaning of the regulations."  In support of that conclusion, Judge Margolis cited and quoted Judge Kravitz's comparable ruling in *Edwards*, rejecting the Commissioner's invocation of harmless error with respect to the telephoned testimony of a medical expert.

The Commissioner now argues that in *Shinseki*, the Supreme Court "warned against the type of reasoning the Magistrate employs.  Specifically, it noted the unreasonableness of dismissing a harmless-error argument based on 'rigid rules rather than case-specific application of judgment,

---

[3]  This quotation from the R.R. fills in a ellipsis appearing in the Commissioner's Objection, [Doc. 25] at 2.

based upon examination of the record.'"  Objection [Doc. 25] at 2 (citing and quoting *Shinseki*, 129

S.Ct. at 1704-05).  In the Commissioner's present perception,[4] *Shinseki* held that "when there is an

error of law that causes no particular harm, the Court should find the error harmless.  At a minimum,

the reviewing Court should at least review the record and consider the argument." [Doc. 25] at 3.

The Commissioner contends that Judge Margolis's "refusal to even consider whether Plaintiff was

actually harmed by a particular error of law runs afoul to [*sic*] *Shinseki*. . . . Her decision to remand

based solely on an error of law, without consideration as to whether that error was harmless,  is

erroneous."  *Id.* at 2, 4.

        The Commissioner's interpretation of what the Supreme Court held in *Shinseki* is derived

from the sole passage from the Court's opinion that the Commissioner quotes in his brief at 2-3, and

I reproduce here:

> The federal 'harmless-error' statute, now codified at 28 U.S.C.
> § 2111, tells courts to review cases for errors of law "without regard
> to errors" that do not affect the parties' "substantive rights."  That
> language seeks to prevent appellate courts from becoming
> impregnable citadels of technicality.   And we have read it as
> expressing a congressional preference for determining "harmless
> error" without the use of presumptions insofar as those presumptions
> may lead courts to find an error harmful, when, in fact, in the
> particular case before the court, it is not.

Objection [Doc. 25] at 2-3 (quoting *Shinseki*, 129 S.Ct. at 1705 (citations omitted)).

        In the case at bar, the Commissioner takes an overly simplistic view of the Supreme Court's

decision and reasoning in *Shinseki*.  That case was complex and the Court's decision relatively

---

        [4] The Supreme Court decided *Shinseki* in 2009, so the opinion antedates Judge Kravitz's
opinion in *Edwards* and Judge Margolis's R.R. in the case at bar.  It does not appear that the
Commissioner cited *Shinseki* in either of these subsequent cases to support its harmless-error
theory.

elaborate.  The Veterans Administration had denied liability benefits to two veterans, because the administrative record failed to adequately support their claims.  In one instance, the VA had told a veteran named Sanders what additional information was needed, but failed to specify what portion of that evidence the veteran would be responsible for providing.  In the other, the VA failed to tell a veteran named Simmons what information she needed to provide and failed to notify her of a relevant medical exam the VA had scheduled on her behalf.  In both instances, reviewing courts held that the VA committed the error of failing to perform its duty to help a veteran develop his or her claim.

The Supreme Court granted certiorari in both cases "in order to determine the lawfulness of the Federal Circuit's 'harmless-error' holdings, " 129 S.Ct. at 1704, and began its decision by concluding that the Federal Circuit's "harmless-error" framework was not consistent with a relevant statute which "requires the Veterans Court to apply the same kind of "harmless-error" rule that courts ordinarily apply in civil cases."  *Id*.  The Court's discussion of and expansion upon that civil-case concept contains the language which the Commissioner quotes in his present brief.  However, more significant guidance for the case at bar may be found in what the Court did next in *Shinseki*.

Specifically, in one of the two veterans' claims before it, the Court affirmed a lower court's "harmless error" conclusion and put an end to the claim.  In the second, the Court declined to apply the harmless error concept and remanded the claim for further administrative proceedings. The Court explained these differing results in language which it is useful to quote.  In considering whether a claimant has the burden of showing that an administrative error was harmful to his claim, the Court said:

In ordinary civil appeals, for example, the appellant will point to

> rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence. Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary.

129 S.Ct. at 1706. This language is instructive because it reveals the Court's conclusion that the harm an error causes to a party may be so obvious that "nothing further need be said." Other cases may differ. It depends on the particular circumstances.

The conceptual differences in "harmless error" analysis are illustrated by the two veterans' claims the Court adjudicated in *Shinseki*. With respect to the first case, involving the veteran named Sanders, the Court said:

> In Sanders' case, the Veterans Court found the notice error harmless. And after reviewing the record, we conclude that finding is lawful. The VA told Sanders what further evidence would be necessary to substantiate his claim. It failed to specify what portion of any additional evidence the Secretary would provide (we imagine none) and what portion Sanders would have to provide (we imagine all).
>
> How could the VA's failure to specify this (or any other) division of labor have mattered? Sanders has pursued his claim for over six decades; he has had numerous medical examinations; and he should be aware of the respect in which his benefits claim is deficient (namely, his inability to show that his disability is connected to his World War II service). . . . He has not explained to the Veterans Court, to the Federal Circuit, or to us, how the notice error to which he points could have made any difference. The Veterans Court did not consider the harmlessness issue a borderline question. Nor do we.

129 S.Ct. at 1708.

In the second case, that of the veteran named Simmons, the veteran's claim was loss of hearing, and the administrative record was complicated by the fact that the VA had "arranged for a further right-ear medical examination, which (because of lack of notice) Simmons failed to attend." *Id*.  In directing a remand for further administrative proceedings, the Supreme Court said:

> Some features of the record suggest the error was harmless, for example, the fact that Simmons has long sought benefits and has a long history of medical examinations.  But other features – *e.g.*, the fact that her left-ear hearing was concededly service connected and has continuously deteriorated over time, and the fact that the VA had scheduled a further examination of her right ear that (had notice been given) might have revealed further left-ear hearing loss – suggest the opposite.  Given the uncertainties, we believe it is appropriate to remand this case so that the Veterans Court can decide whether reconsideration is necessary.

*Id*.  What is striking about this holding is that the harm to the claimant caused by the VA's failure to give her notice of a scheduled right-ear examination was not *certain*, only *possible*: the examination, had it taken place, "*might* have revealed further left-ear hearing loss," 129 S.Ct. at 1708 (emphasis added).

In *McLeod v. Astrue*, 640 F.3d 881 (9th Cir. 2010), the Ninth Circuit held that the Supreme court's decision in *Shinseki* (the Ninth Circuit called the case "*Sanders*") applied to Social Security cases as well as VA cases.[5]  After reviewing and paraphrasing the Supreme Court's decision, the Ninth Circuit said of it:

> We infer from *Sanders* that, despite the burden to show prejudice being on the party claiming error by the administrative agency, the reviewing court can determine from the "circumstances of the case" that further administrative review is needed to determine whether there was prejudice from the error.  Mere probability is not enough.

---

[5]  I will assume that holding is correct, although the Second Circuit does not appear to have addressed the question.

15

> But where the circumstances of the case show a substantial
> likelihood of prejudice, remand is appropriate so that the agency "can
> decide whether re-consideration is necessary." By contrast, where
> harmlessness is clear and not a "borderline question," remand for re-
> consideration is not appropriate.

640 F.3d at 888 (internal quotation marks are from the Supreme Court's decision in *Shinseki*). While

this passage aptly captures the distinction between the two kinds of cases, I respectfully disagree with

the Ninth Circuit's statement that "mere probability is not enough" to justify further administrative

consideration of harm an error caused a claimant. *Shinseki* does not support so high a bar. On the

contrary, the Supreme Court spoke in terms of a "borderline question" and what the omitted

examination "might have revealed": the language of possibility, not probability.

## IV.

Given the facts of this case, the clear import of the Social Security Administration's

regulations, and the cases cited *supra*, I conclude that the Defendant Commissioner's Objection to

the Magistrate Judge's Recommended Ruling must be overruled, the Recommended Ruling accepted

by this Court, and the case remanded to the Commissioner pursuant to 42 U.S.C. § 402(g).

The pertinent facts are not disputed. The Commissioner's Objection to the R.R. is based

solely and entirely upon the Supreme Court's decision in *Shinseki v. Sanders*.[6] He argues that

---

[6] It could fairly be suggested that the Commissioner's single-minded reliance upon *Shinseki* in the case at bar is something of an afterthought, or an invention mothered by necessity. The Supreme Court decided *Shinseki* on April 21, 2009. If, as the Commissioner now contends, the Court's decision is dispositive of a claimant's contention that an administrative error harmed his claim, it is odd that the government apparently did not cite *Shinseki* to Judge Kravitz in *Edwards*, or to Judge Margolis in the present case, when those judges were concluding that the adverse effect upon claimants of ALJs taking the testimony of key witnesses by telephone required remands. But I do not decide this case on the basis of that chronological peculiarity, because in any event the Commissioner's reliance upon *Shinseki* in the case at bar fails for the reasons stated in text.

Magistrate Judge Margolis, in the course of recommending a remand for further administrative proceedings, "refus[ed] even to consider whether Plaintiff was actually harmed" by the ALJ's error in taking the vocational expert's testimony by telephone, [Doc. 25] at 2, and that *Shinseki* mandates such an inquiry by a reviewing court.  The Commissioner is wrong, first, about what the Magistrate Judge did, and second, about what *Shinseki* required her to do.

First: The R.R. shows that Judge Margolis gave careful consideration to the harm inflicted upon Koutrakos when the ALJ, departing from SSA regulations, and over Plaintiff's objection,  took the vocational expert's testimony by telephone.  The R.R. noted the Commissioner's argument before the Magistrate Judge that she should "employ a standard where it will recognize improper notice as an error of law, but require a plaintiff to reasonably demonstrate harm or prejudice – supported by the record – stemming from the error before ordering a remand."  R.R. [Doc. 24] at 12 (quoting the Commissioner's brief, [Doc. 23] at 7).  In its brief to this Court, the Commissioner quotes with disapproval what Judge Margolis then said in her R.R.: "The Court need not go this far as it is clear that the ALJ's conduct of improperly notifying plaintiff that the vocational expert would testify, without notifying plaintiff that how such testimony would be taken [*sic*], and the taking of such improper telephonic testimony, runs contrary to the express governing language of the Secretary's regulations."  R.R. [Doc. 24] at 12.  The Commissioner seems to read Judge Margolis's phrase  "the Court need not go this far" as meaning that she need not and would not give any consideration to whether the ALJ's conduct caused Koutrakos any harm.  However, the Commissioner's present brief omits the very next sentence from the R.R., in which Judge Margolis said: "*Furthermore*, in this case, great weight was necessarily assigned to the vocational expert testimony, in so far as this case was remanded from this Court in 2009 precisely for the taking of

such testimony." *Id*. (emphasis added).  The italicized adverb shows that Judge Margolis, having considered whether or not the ALJ committed an error (he did), moved on to a different question: whether Koutrakos was harmed by that error (she was).  The clarity of the distinction is simply a matter of plain English: "furthermore" is defined as "in addition to what precedes: BESIDES." *Webster's New Collegiate Dictionary* (1976) at 467.  If truth be told, the Commissioner's grievance is not that Judge Margolis "refused even to consider" whether the erroneously telephoned testimony had harmed Koutrakos; rather, the Commissioner is aggrieved by the Magistrate Judge's considered conclusion that harm must be inferred from the resulting inability of claimant's counsel to confront and observe the expert while cross-examining him.  As Judge Kravitz aptly observed in *Edwards*, had so important an expert witness "appeared in person or by video teleconference " rather than testify by telephone, it is "possible that Ms. Edwards' cross-examination may have been more effective or that the ALJ may have found the medical expert's testimony to be less persuasive." 2011 WL 3490024, at *9.[7]  That possibility was a sufficient indicia of harm to require a remand in *Edwards*, and so it is in the case at bar.

Second: Contrary to the Commissioner's contention, the Supreme Court's decision in *Shinseki* does not preclude a remand in the case at bar.  Quite the reverse: the Court's reasoning supports the remand Judge Margolis recommends.  The circumstances of the instant case – the vocational expert's central role in evaluating Plaintiff's disability, the central issue in the case – make the potential harm to the claimant inherent in the ALJ's error so apparent to a reviewing court

---

[7]  The truth of that observation resonates with all participants in the trial process, advocates and judges.  When in federal practice a trial judge sits as finder of the facts, "clearly erroneous" is the standard of review on appeal, and the courts of appeal routinely give, as a reason for deferring to a trial judge's factual findings, that the trial judge was able to observe the witnesses' demeanor, while the appellate judges were not.

that "nothing further need be said."  Alternatively, and viewing the case in the light most favorable to the Commissioner, at the very least "the harmlessness issue" presents "a borderline question," and that is sufficient under *Shinseki* to justify a remand so that the expert's testimony may be taken in a proper manner, consistent with the SSA's present regulations.  To analogize Plaintiff to the two veterans in *Shinseki*, Koutrakos is a Simmons, not a Sanders, and the remand the Magistrate Judge recommends is entirely appropriate.

Lest there be any misunderstanding, this Court is not critical of the Commissioner's motives. Judge Margolis said in her R.R. that a finding of harmless error in this case "would be to allow Defendant to circumvent the plain meaning of the regulations." [Doc. 24] at 14.  In his Objections brief, the Commissioner protests: "The reality is that the Commissioner is not trying to circumvent the regulations.  Rather, the Commissioner is simply attempting to efficiently deal with an overwhelming number of claim for benefits." [Doc. 25] at 2 (footnote omitted).  I do not understand the Magistrate Judge to be ascribing an invidious motive to the Commissioner; I read her quoted words as no more than a description of the practical effect of finding that the ALJ's error in this case was harmless.  One can surely sympathize with the Commissioner and the skilled and dedicated public servants in the Social Security Administration as they seek to deal with the myriad individuals' claims for statutory benefits of one kind or another.  But if it be true that an overwhelming number of claims has created an overwhelming need for taking expert witnesses' testimony over the telephone rather than by appearing at a hearing, as the present regulations require, the proper course for the agency to follow was described by Judge Kravitz in *Edwards*: If the Commissioner desires a reviewing court's approval when during a hearing an ALJ "allows such telephonic testimony without notice or over claimants' objections, the Social Security

19

Administration must create a rule through the approved notice-and-comment process." 2011 WL 3490024, at *8.[8]  Should the SSA  initiate that process at this time, it might even persuade the Association of Administrative Law Judges to change its earlier position of opposing telephonic testimony, and support such a procedure now.  But that is for the future.  Living as we do in the present, neither ALJs nor the Commissioner himself can abrogate the current regulatory scheme and proceed as they think right or expedient in a given case.

In this case, I hold that the ALJ, who disregarded present SSA regulations and took telephonic testimony from an expert witness over the claimant's objection, committed an error of law which cannot, in the circumstances of the case, be regarded as harmless.  Remand is the appropriate remedy, for the purpose of having the vocational expert testify in person, in the hearing room or by video teleconference, and for such other procedures, if any, as the parties may agree or the ALJ may direct in order to complete a fair administrative record.

This Court APPROVES the Magistrate Judge's Recommended Ruling, in the manner set forth in this Ruling.

Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. 19] is GRANTED, and the case is REMANDED pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Ruling.

The Defendant's Motion to Affirm the Decision of the Commissioner [Doc. 23] is DENIED.

---

[8]  Nothing in this Ruling is intended to suggest that counsel for a claimant, or a properly advised claimant appearing *pro se* at an administrative hearing, cannot *consent* to the taking of an expert witness's testimony over the telephone.  In the case at bar, Plaintiff objected to that procedure, through counsel.

The Clerk of the Court shall enter Judgment in accordance with this Order and close the file.

IT IS SO ORDERED.

Dated: New Haven, Connecticut
       April 13, 2012

                                        */s/Charles S. Haight, Jr.*
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge

21